# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 11, 2011

Lyle W. Cayce
Clerk

No. 10-10409

GREG PORTER; MICHAEL RAMIREZ; SCOTT EVANS; STEVEN W. JONES,

Plaintiffs - Appellees

v.

GUADALUPE VALDEZ; JESSE FLORES,

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-148

Before BARKSDALE, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This interlocutory appeal challenges denial of a motion for judgment on the pleadings in a 42 U.S.C. § 1983 action by members of a sheriff's department for claimed constitutional violations by Sheriff Guadalupe Valdez and Executive Chief Deputy Jesse Flores. Sued in their individual and official capacities, defendants contend: the individual-capacity claims are barred by qualified immunity; and plaintiffs failed to plead sufficient facts in support of their claims

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

against defendants not only in their individual, but also in their official, capacities. Jurisdiction exists only to review the qualified-immunity denial (which concerns only the individual-capacity claims). AFFIRMED in part; REVERSED in part; REMANDED.

## I.

Plaintiffs publically supported Sheriff Valdez' opponent in the November 2008 Dallas County Sheriff's election. Along that line, Senior Sergeant Greg Porter and Deputy Michael Ramirez were reported by a Dallas newspaper as being "the most outspoken critics of [incumbent] Sheriff . . . Valdez". The Sheriff was re-elected.

Lieutenant Steven Jones, Senior Sergeant Porter, and Deputies Ramirez and Scott Evans are long-time members of the Sheriff's Department. Senior Sergeant Porter has served approximately 25 years, is SWAT certified, and prior to the election was the department's gun range master, having previously served 16 years as a firearms instructor; Deputy Ramirez has served 28 years, prior to the election was the department's only motorcycle-certified deputy, and was assigned to Sunnyvale, Texas; Deputy Evans has served 16 years, and prior to the election was one of the department's two dog handlers; and Lieutenant Jones has served approximately 29 years, and prior to the election was the patrol section lieutenant, working from 8:00 a.m to 4:30 p.m.

Plaintiffs were also prominent members in several organizations active in local politics: Deputy Ramirez, as a vice president for the Greater Dallas Chapter of the National Latino Peace Officers Association and member of the Texas Municipal Police Association (TMPA); Senior Sergeant Porter, as Chairman of the Dallas County Sheriff's Association (DCSA), and a director for TMPA; Lieutenant Jones, as an active supporter of the campaign of the Sheriff's opponent in the 2008 election; and Deputy Evans, as president of DCSA and a member of TMPA. Their political activity involved: all plaintiffs actively campaigned for the Sheriff's opponent and endorsed him at a news conference;

three plaintiffs were leaders of police organizations that endorsed that opponent; Lieutenant Jones coordinated deputies to work off-duty at the opponent's campaign events; and Deputy Ramirez was quoted in a Dallas newspaper stating his support for the opponent.

On 12 December 2008, following the November election, Executive Chief Deputy Flores announced the transfers of all four plaintiffs:  Senior Sergeant Porter, from day shift at the gun range to evenings in jail intake; Deputy Ramirez, from day-patrol duty to midnight watch in jail release and duties at the jail-information desk; Lieutenant Jones, from day shift in the patrol division to midnight shift in jail intake; and, although Deputy Evans remained a dog handler, to the night shift.  According to a newspaper article included by hyperlink in the complaint, Sheriff Valdez and Executive Chief Deputy Flores stated the "reassignments" of plaintiffs and 16 others were "an effort to maximize training and experience for all of [the department's] employees" and to give "everyone . . . an equal opportunity to learn and grow within the department".

Believing the transfers were in retaliation for their above-described political activities, plaintiffs retained counsel, who by 6 January 2009 letter advised the Sheriff of relevant law and requested that plaintiffs be returned to their previous assignments.  Receiving no response, plaintiffs filed this civil-rights action on 29 January 2009. Plaintiffs claimed defendants' actions, in their individual and official capacities, constituted:  First Amendment retaliation (through the Fourteenth Amendment); and, in violation of the Fourteenth Amendment, denial of due process of law, on both procedural and substantive grounds, and of equal protection of the law. Plaintiffs conceded at oral argument here that they seek the same relief from any of their claims.

Defendants filed an answer and, pursuant to Rule 12(c), moved for judgment on the pleadings.  Their motion contended: qualified immunity barred plaintiffs' claims against them in their individual capacities; and plaintiffs failed

to provide the requisite well-pleaded facts for their claims against defendants in their individual and official capacities.

Pursuant to Federal Rule of Civil Procedure 7(a)(7), the court ordered a reply to the answer. The reply was to respond to defendants' qualified-immunity defense. The reply, however, addressed only retaliation.

The district court ruled: qualified immunity barred Deputy Evans' individual-capacity, First Amendment retaliation claim; he generally failed to state a First Amendment claim entitling him to relief, thus his official-capacity claim in that regard also failed; and the remainder of the Rule 12(c) motion was denied. *Porter v. Valdez*, No. 10-10409 (N.D. Tex. 25 Mar. 2010) (order granting in part and denying in part motion for judgment on the pleadings). Other than for Deputy Evans, the district court did not address plaintiffs' official-capacity claims, ruling that, by pleading facts sufficient to overcome qualified immunity, plaintiffs had also stated a claim upon which relief may be granted. *Id.* at 7 n.3.

**II.**

In this interlocutory appeal, defendants maintain: plaintiffs' individual-capacity claims are barred by qualified immunity; and they failed to allege well-pleaded facts that would permit valid retaliation, equal-protection, and due-process claims, including against them in their official capacities. In short, defendants are appealing more than the qualified-immunity denial.

A qualified-immunity denial, to the extent it turns on a matter of law, "is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment". *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010). Because qualified immunity is immunity from suit, it includes, *inter alia*, protection from burdens of discovery. "Such appellate review is premised upon the reality that, in some instances, if an order is not reviewed before the issuance of a final judgment, the practicality of reviewing that order is lost." *Hill v. City of Seven Points*, No. 00-41436, 2002 WL 243261, at *4 (5th Cir. 17

Jan. 2002) (citing *Mitchell*, 472 U.S. at 525). This jurisdiction includes appeals from denials of qualified immunity claimed in Rule 12(c) motions. *Giardina v. Lawrence*, No. 09-30437, 2009 WL 4572837, at \*1 (5th Cir. 7 Dec. 2009). On the other hand, an interlocutory appeal is not permitted from the denial of Rule 12(c) motions simply claiming a failure to plead sufficiently. *See, e.g.*, *Johnson v. Johnson*, 385 F.3d 503, 528-29 (5th Cir. 1999) (reviewing summary judgment motion on interlocutory appeal).

Denial of a Rule 12(c) motion is reviewed *de novo*, accepting the complaint's well-pleaded facts as true and viewing them in the light most favorable to plaintiff. *E.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To withstand a Rule 12(c) motion, a complaint must provide sufficient facts "to state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation marks omitted). Rulings on Rule 12(c) motions are reviewed using the same considerations as for reviewing rulings on Rule 12(b)(6) motions (failure to state claim). *E.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). This inquiry focuses on the allegations in the complaint, *not* whether plaintiffs have pleaded sufficient facts to succeed on the merits. *E.g.*, *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

### A.

Regarding issues that can be considered in this interlocutory appeal, defendants claim, *inter alia*, that the claims against them in their individual and official capacities are so intertwined that we have jurisdiction also to review the rulings on the official-capacity claims. Of course, qualified immunity may *not* be asserted for claims against defendants in such capacity; thus, our court is normally without jurisdiction to consider official-capacity claims on interlocutory review. *E.g.*, *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 392-93 (5th Cir. 2000).

On this record, we lack jurisdiction regarding those claims. They are *not* so intertwined that this might be an exception to the rule against interlocutory appeals for them because, among other things, other factors and elements are at play than for claims against defendants in their individual capacities.

**B.**

Therefore, we turn to defendants' contentions concerning qualified immunity for the individual-capacity claims. For the reasons that follow, defendants are not entitled to qualified immunity for the retaliation and due-process claims; they are entitled to it for the equal-protection claim.

Qualified immunity serves to ensure government employees are not impeded from their public work to defend frivolous actions. *See generally Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). It is an immunity born of freedom from suit, rather than simply a defense to liability. *Del A. v. Edwards*, 855 F.2d 1148, 1150 (5th Cir. 1988). Therefore, through qualified immunity, government officials conducting discretionary functions "are shielded from liability for civil damages insofar as their conduct does not [1] violate clearly established statutory or constitutional rights [2] of which a reasonable person would have known". *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, qualified-immunity analysis is based upon two, well-established prongs: (1) whether plaintiffs show violation of a clearly-established statutory or constitutional right; and, if so, (2) whether they show defendants' actions were "objectively [un]reasonable in light of clearly established law". *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003).

Qualified immunity can be asserted, of course, at different points in an action. Because, in this action, it is asserted in response to the complaint, by a Rule 12(c) motion, as opposed, for example, to asserting it through a summary-judgment motion or at trial, there is, of course, no discovery or evidence on which to base the two-prong analysis. Instead, the analysis for either prong must be limited to the facts alleged in the complaint and the Rule 7 reply. As a result,

review of defendants' qualified-immunity assertion requires review of the sufficiency of plaintiffs' complaint because, as shown above, whether a sufficient claim is pleaded is "both inextricably intertwined with and, directly implicated by, the qualified immunity defense" asserted in response to the complaint. *Iqbal*, 129 S. Ct. at 1946-47 (citations and internal quotations marks omitted).

### 1.

Plaintiffs contend they sufficiently pleaded a violation of the First Amendment because their transfers were adverse employment actions, made in retaliation for a constitutionally-protected activity—political speech. Defendants counter that this claim is barred by qualified immunity because the law was not clearly established; and, in that regard, plaintiffs failed to plead facts for a plausible claim of First Amendment retaliation. For the latter, defendants assert that the district court erred by permitting conclusory statements to suffice for well-pleaded facts. Defendants contend, in the alternative: assuming the First Amendment claim was sufficiently pleaded, plaintiffs did not sufficiently plead, for prong-two purposes, that the transfers were objectively unreasonable under clearly-established law.

### a.

### i.

Defendants maintain erroneously that the law is unsettled concerning whether a lateral transfer can be an "adverse employment action", especially here, because, as plaintiffs conceded in their Rule 7 reply, they received neither reduction in rank nor decrease in salary or benefits. "To be equivalent to a demotion, [however,] a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) (citing *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996)).

**ii.**

Equally unavailing is the contention that plaintiffs failed to plead sufficient facts for their retaliation claim. A complaint must contain enough facts "to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). For a cognizable retaliation claim, plaintiffs must allege: (1) they suffered an adverse employment action; (2) they were engaged in protected activity; and (3) there was a causal connection between the two. *E.g.*, *Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008).

Plaintiffs alleged: they had obtained seniority within the department; it operates on a seniority system that allows them a choice in assignment; they possessed positions of seniority and prestige within it prior to Sheriff Valdez' re-election; they were outspoken supporters of the Sheriff's political opponent; the Sheriff and Executive Chief Deputy knew of plaintiffs' political activities, observing them in support of the Sheriff's opponent at campaign events; and, within 40 days after the election, the Sheriff and Executive Chief Deputy ordered plaintiffs transferred to other positions perceived as being less prestigious, less interesting, and having worse hours than before.

Considering the alleged facts in the requisite light most favorable to plaintiffs, they sufficiently pleaded a First Amendment retaliation claim. It is plausible that: they were subject to an adverse employment action; by participating in campaign activities, they engaged in protected speech; and a causal nexus exists for a First Amendment retaliation claim, given their transfers occurred shortly after the Sheriff's re-election. For the latter element, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a *prima facie* case of retaliation". *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citation and internal quotation marks omitted).

No. 10-10409

**b.**

As discussed *supra*, under the second prong of our qualified-immunity analysis, we must determine whether plaintiffs showed defendants' conduct was "objectively [un]reasonable in light of clearly established law". *Nunez*, 341 F.3d at 387. To succeed on this prong in response to a Rule 12(c) motion, plaintiffs must allege facts sufficient to show that no reasonable officer could have viewed his actions were proper. *Babb*, 33 F.3d at 477. Again, "the objective legal reasonableness of an officer's conduct must be assessed in light of the legal rules that were clearly established at the time of his action". *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009) (citation and internal quotation marks omitted).

Plaintiffs contend the transfers were objectively unreasonable in the light of clearly-established law because defendants "removed uniquely qualified, veteran employees . . . and placed them in positions normally set aside for those with less experience". Defendants only assert a lack of clarity in the law concerning adverse employment actions. For the reasons stated *supra*, existing, relevant law was clear at the time of those actions; therefore, pursuant to the facts as alleged, it is plausible that no reasonable officer could have believed his actions were reasonable.

**2.**

Plaintiffs conceded at oral argument here that their equal-protection claim is simply their First Amendment retaliation claim under a different title and was made as part of their "shotgun approach" to claims against defendants. Plaintiffs attempt to create their own equal-protection classification, founded solely on their exercise of First Amendment protected speech. Plaintiffs failed to allege facts for an equal-protection claim in the light of: protected speech being an individual right; their failure to identify similarly treated individuals; and, in particular, their concession at oral argument. *Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir. 1990) (holding plaintiff fails to state an equal-protection claim when it is a restatement of a First Amendment claim).

Because the equal-protection claim is simply a restatement of the retaliation claim, we need not address defendants' contentions contesting a class-of-one claim. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 608-09 (2008) (holding class-of-one, equal-protection claim not cognizable in public employment context). Similarly, because the facts alleged in the complaint fail to provide a plausible equal-protection claim, we need not address the second prong (defendants' objective reasonableness) for qualified-immunity analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("A court may rely on either prong of the defense in its analysis.").

**3.**

Last, plaintiffs claim the transfers constituted a deprivation of their property rights without procedural and substantive due process of law. Defendants counter: the transfers did not constitute a deprivation of property; and the due-process claim is barred because plaintiffs failed to exhaust the department's administrative procedures.

**a.**

Although the complaint presents a due-process claim "predicated on both procedural and substantive due process", plaintiffs fail to address the procedural due-process issue in their brief. In any event, their claim hinges upon their having a property interest in continued public employment. *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 n.3, 542 (1985) (procedural due-process claim under § 1983 requires showing deprivation without due process of life, liberty, or property interest); *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993) (substantive due-process claim requires showing arbitrary or capricious termination of constitutionally-protected property interest in employment).

"The Constitution does not create property interests . . . and [plaintiffs] therefore look to Texas law for the creation of a property interest that will support their claim to due process rights." *Garcia v. Reeves County*, 32 F.3d 200,

203 (5th Cir. 1994) (internal citation omitted). Public employees enjoy a property right in continued employment, if their at-will status has been modified by state or local law. *Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir. 1987). "[W]hen a Texas city government adopts a personnel procedure which includes a 'just cause' provision, the city employees' at-will status is modified, and they enjoy a property interest in continued employment". *Garcia*, 32 F.3d at 203 (citing *Schaper*, 813 F.2d at 713-14).

The department's personnel policies include such a provision, having adopted its civil service system pursuant to Chapter 158 of the Texas Local Government Code, *see generally* DALLAS COUNTY, TEXAS, CODE app. A; and, plaintiffs have not been specifically exempted from that system. Texas Local Government Code § 85.003(c) provides: "a deputy serves at the pleasure of the sheriff"; however, "[a] deputy who is included in the coverage of a civil service system created under Chapter 158 may be suspended or removed only for a violation of a civil service rule adopted under that system". TEX. LOC. GOVT. CODE ANN. § 85.003(c), (f). Arguably, plaintiffs have sufficiently alleged a protected property interest in continued employment.

### b.

In any event, as noted, defendants contend that plaintiffs did not state a claim, for both procedural and substantive due process, because they failed to allege facts that they utilized their administrative remedies before pursuing their due-process claim. We decline to address this contention because it is raised for the first time on appeal. *E.g.*, *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999).

### III.

For the foregoing reasons, we lack jurisdiction to address the Rule 12(c) order insofar as it pertains to plaintiffs' official-capacity claims; that part of the Rule 12(c) order addressing qualified immunity is AFFIRMED IN PART (for the individual-capacity retaliation and due-process claims) and REVERSED IN

PART (for the individual-capacity equal-protection claim); and this matter is REMANDED for further proceedings consistent with this opinion.